ARTHUR C. VAN ETTEN, Respondent, *v.* HARRY T. CONANT, as Executor of the Will of CAROLINE E. CONANT, Deceased, Appellant.

Third Department, June 19, 1923.

Principal and agent — action to recover commissions on sale of automobile — automobile was delivered to motor car company for which plaintiff was acting as sales agent — sale made by plaintiff was made as agent for motor car company.

In an action to recover commissions on the sale of an automobile, it appeared that the plaintiff was engaged as salesman for a motor car company; that defendant had some conversation with the plaintiff with reference to selling the automobile; that thereafter the automobile was delivered to the motor car company for sale; that the plaintiff sold the automobile and received a payment

down, a part of which he turned over to the owner; that the next day thereafter the motor car company demanded that the plaintiff deliver the automobile to its garage, which he did; that the automobile was actually sold to the man to whom the plaintiff made the sale, and that after the delivery of the automobile the plaintiff was discharged as a salesman.

*Held*, that the plaintiff is not entitled to recover commissions from the defendant for the sale of the automobile, since in making the sale he was acting for his principal, the motor car company, and if he made any arrangement with the defendant for the sale of the automobile by himself, personally, he did not notify his principal and he will not be allowed, therefore, to make a profit for himself arising out of a violation of his duty to his principal.

Appeal by the defendant, Harry T. Conant, as executor, etc., from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Broome on the 28th day of October, 1922, upon the verdict of a jury as modified by stipulation, and also from an order entered in said clerk's office on the 26th day of October, 1922, denying defendant's motion for a new trial made upon the minutes.

*Merchant, Waite & Waite*, for the appellant.

*Hinman, Howard & Kattell*, for the respondent.

Hasbrouck, J.:

The pertinent facts in the above case as testified to by the plaintiff in sequence are as follows:

In July, 1921, he was in the employment of the Binghamton Motor Car Company as a sales agent upon the straight commission basis and had been since about the first of May. The defendant, as executor of the estate of his mother, Caroline E. Conant, was the owner of a sedan Cadillac car.

This car around the twelfth of July had been driven by Mrs. Sisson, a sister of the defendant, who was authorized to sell it, from Camden, N. Y., defendant's residence, to Binghamton for sale; that plaintiff talked with Mrs. Sisson about July twentieth or twenty-third. Mrs. Sisson had come to the Binghamton Motor Car Company's garage in the Cadillac sedan, said she had been trying to get Van Etten on the telephone for the past week; that Vice-President Faatz had answered the telephone and told her each time that Van Etten was out of town; that Mrs. Sisson had said she had her mother's Cadillac to sell; that Van Etten said he thought if she got $2,400 for the car without trading it, it would be well sold; that she said Mr. Faatz told her it was satisfactory for Van Etten to go ahead and handle the sale of the car; that she had had a talk with Faatz and she said: " The car will be in my garage on Riverside Drive and you can show it to anybody you have in mind that might be interested in a car of this type; " that after-

wards and about that date, plaintiff talked with Charles F. Sisson. He said to plaintiff: " You will have to get your commission over and above the $2,400, anything over and above that is yours."

On July twenty-fifth the defendant delivered the car to Raymond Faatz, vice-president of the Binghamton Motor Car Company, for sale, and the car was taken to the Binghamton Motor Car Company's garage.

The following day, July twenty-sixth, plaintiff was instructed by Vice-President Faatz that the car company would sell the car for the defendant without commission and further instructed him to show the car to a Mr. Berry, which he did in the morning. On the same day in the afternoon plaintiff met a man named Flanagan from Binghamton and sold the sedan car to him for $3,000 and received on account $150; that on that day plaintiff paid Mrs. Sisson $100 and did not tell her to whom he sold the car nor the amount of the payment; that next morning he left a certified check with Charles F. Sisson's clerk, Armstrong, for $2,300, which was afterwards returned to him; that on the morning of the twenty-seventh of July plaintiff was called to the office of the Binghamton Motor Car Company and was instructed to bring the car to the garage and to deliver the keys of the car to Flanagan and informed that Charles F. Sisson had sold the car direct to Flanagan; that plaintiff refused to deliver the keys until he was directed to do so by Mr. Sisson over the telephone; that after the delivery of the keys he was discharged as a salesman of the Binghamton Motor Car Company.

Assuming all of the above facts to be true, I do not think the plaintiff makes a case. The delivery of the car to the Binghamton Motor Car Company for sale by the Sissons after the alleged conversations had between them and Van Etten authorizing him to, as he claims, personally handle the proposition is negatived by such delivery. There is nothing in the conversations testified to by Van Etten which is inconsistent with the theory that he was acting as salesman for the Binghamton Motor Car Company. Nothing said which would take his work out of the character as a salesman for his employer. If he intended to demand a commission he should have so told his employer so that he could have arranged to have committed the selling to some other person. The plaintiff's claim, as alleged in his complaint that he contracted to buy the car himself or to sell the car independently of his agency for the Binghamton Motor Car Company, is not sustained by his evidence. When he took the car under the direction of Vice-President Faatz, to show it to one Berry, he was in the service of his company. His possession of the car was not his personal possession; it was

the possession of his principal, and his sale to Flanagan while in such possession would be held to be a sale made by his principal. A sale so made would be in the line of his duty. A sale made by him for profit for himself in disregard of his principal's interests would be a violation of his duty. The duty of an agent is to faithfully carry out the instructions of his employer and to promote his interests in the conduct of his agency. Whenever he enters into an arrangement with third persons without the knowledge of his principal, which gives him an interest inconsistent with his duty to his principal, the latter may avoid the transaction. (Williston Cont. § 1532; *City of Findlay* v. *Pertz*, 66 Fed. Rep. 427; *Alger* v. *Anderson*, 78 id. 729; Story Agency [7th ed.], § 189.)

If under the circumstances assumed to be true the plaintiff undertook while in the employment of the Binghamton Motor Car Company to make a profit for himself such conduct would come within the condemnation of the authorities above quoted, and would warrant the repudiation of the contract by the employer.

We think the evidence shows that the conduct of the plaintiff was disloyal and a fraud upon his principal and to let the verdict stand would be to set a premium on a plain violation of duty and conduct which cannot be accurately described except as unconscionable.

The judgment and order should be reversed on the law and facts, and no motion having been made to dismiss the complaint, or for direction of verdict, a new trial should be granted.

H. T. Kellogg, Acting P. J., Van Kirk and Hinman, JJ., concur.

Judgment and order reversed on the law and facts, and no motion having been made to dismiss the complaint, or for direction of verdict, a new trial is granted, with costs to the appellant to abide the event.